**John L. HRBEK, Appellee,**

v.

**Crispus C. NIX, Appellant.**

No. 93–1473.

United States Court of Appeals, Eighth Circuit.

Submitted Aug. 18, 1993.

Decided Dec. 22, 1993.

Rehearing and Suggestion for Rehearing En Banc Denied Feb. 9, 1994.*

---

* Arnold, Chief Judge, McMillian and Arnold, JJ., would grant suggestion for rehearing en banc.

William A. Hill, Asst. Atty. Gen., Des Moines, IA, argued, for appellant.

Patrick E. Ingram, Iowa City, IA, argued, for appellee.

Before BOWMAN, BEAM, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

BEAM, Circuit Judge.

The State of Iowa, through Warden Crispus C. Nix, appeals the district court's grant of a writ of habeas corpus to John L. Hrbek. Hrbek, an inmate at the Iowa State Penitentiary (ISP), alleged in his habeas petition that the ISP disciplinary committee denied him due process when it disciplined him based on only "some evidence" of his guilt. The district court determined that due process requires the committee to apply at least a preponderance of the evidence standard of proof. Accordingly, the district court granted Hrbek's petition. Because the district court's conclusion is contrary to our holding in *Goff v. Dailey*, 991 F.2d 1437 (8th Cir.), *cert. denied*, — U.S. —, 114 S.Ct. 564, 126 L.Ed.2d 464 (1993), we reverse.

## I. BACKGROUND

Hrbek, who is serving a life sentence at ISP, provides legal services to his fellow inmates. This controversy began with a letter concerning such services sent to Hrbek

by Gary Robinson of Des Moines, Iowa. ISP officials intercepted the letter on January 5, 1989, and discovered that it contained a $20 money order which the prison officials believed to be payment for legal services Hrbek had provided to ISP inmate William Bumpus. The text of the letter reads:

> Jan 4, 1989
>
> 2839 Center St
>
> Des Moines, Ia 50312
>
> John:
>
> Mickey, known as William Bumpus said to tell you that he has not heard from the Dist Court Clerk concerning the Motion you filed for him for appointment of counsel 10-26-88 and to write to his mother concerning this matter soon. Under the name Gary Robinson same address. Stay in touch and he will do the same. I will write him to let him know what you said, because they will not let him correspond with you. Hope to hear from you real soon.
>
> Sincerely,
>
> Gary Robinson
>
> I'm William's Cousin
>
> P.S.
>
> He is sending you this money $20.00. He's out side the walls now but still in Fort Madison.
>
> Thank you

Based on this letter, Hrbek was charged under ISP regulations with misusing the mails, bartering or selling his services, and attempting or conspiring to violate ISP rules.

At his disciplinary hearing, Hrbek admitted that he had done legal work for William Bumpus, but denied that he requested or expected payment for his efforts. The disciplinary committee examined the affidavits of several inmates for whom Hrbek had done legal work in the past. All averred that Hrbek neither sought nor received payment for his services. Hrbek also presented an affidavit from the author of the letter stating that the money order had been erroneously included in the envelope addressed to Hrbek.

Upon consideration of the evidence, the disciplinary committee found that Hrbek violated ISP rules by conspiring through the mail to circumvent ISP regulations and by attempting to obtain money from other inmates by charging for legal services.[1] The committee sentenced Hrbek to 15 days disciplinary detention, loss of 365 days good time, restriction to a maximum security cellhouse for 365 days, and loss of "jailhouse lawyer privileges" for 365 days. App. at 28.

After exhausting the ISP appeal process, Hrbek filed a petition for post-conviction relief with the Iowa courts. Upon denial of this petition, Hrbek petitioned the federal district court for a writ of habeas corpus claiming that the disciplinary committee violated his right to due process by using "some evidence" as its standard of proof.[2] The district court, relying on *Goff v. Dailey,* 789 F.Supp. 978 (S.D.Iowa 1992), held that due process requires the state to prove guilt in prison disciplinary hearings by at least a preponderance of the evidence and therefore granted Hrbek's petition. The state appeals.

## II. DISCUSSION

Subsequent to the district court's grant of the writ in this matter, a panel of this court reversed *Goff* and rejected the reasoning that formed the basis of the district court's opinion. *Goff v. Dailey,* 991 F.2d 1437 (8th Cir.), *cert. denied,* — U.S. ——, 114 S.Ct. 564, 126 L.Ed.2d 464 (1993). *Goff* presented an identical due process challenge to ISP's disciplinary procedure. The *Goff* panel held that federal review of prison disciplinary decisions is limited and that "the requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board." *Id.* at 1440 (quoting *Superinten-*

---

1. The disciplinary committee did not find violations of any substantive rules because Hrbek never received the money order.

2. Charles Harper, an administrative law judge for the Iowa Department of Corrections, testified at the state post-conviction hearing:

   Q. Do you have a particular standard of evidence that you must meet in regard to finding someone guilty of an administrative infraction at the Iowa State Penitentiary?
   A. Yes.
   Q. What is that standard?
   A. Some evidence.
   App. at 80.

*dent, Massachusetts Correctional Inst. v. Hill,* 472 U.S. 445, 455, 105 S.Ct. 2768, 2774, 86 L.Ed.2d 356 (1985)). In *Hill,* the Supreme Court balanced inmates' due process interests against the prison's interests in "assuring the safety of inmates ... [and] avoiding burdensome administrative requirements that might be susceptible to manipulation," *Hill,* 472 U.S. at 455, 105 S.Ct. at 2774, and concluded that prison disciplinary decisions should be subject to minimal scrutiny by the federal courts. Thus, the *Goff* panel rejected the argument that the Constitution requires prison disciplinary actions to be based on a preponderance of the evidence or higher standard of guilt. *Goff,* 991 F.2d at 1440. We do not have the authority, nor are we inclined, to overrule *Goff. See United States v. Brelsford,* 982 F.2d 269, 272 n. 5 (8th Cir.1992).

■ Hrbek's argument that a preponderance of the evidence is logically the lowest standard of proof necessary to find a fact at the initial hearing is simply irrelevant to our constitutional review.[3] Although inmates retain the right to a hearing for deprivations of certain protected liberty interests after incarceration,[4] the nature of the prison system dictates that inmates are not entitled to the full panoply of rights due a defendant in criminal proceedings. *Wolff v. McDonnell,* 418 U.S. 539, 555–56, 94 S.Ct. 2963, 2974–75, 41 L.Ed.2d 935 (1974). In the prison discipline context, where swift and sure punishment is often imperative,[5] the Constitution does not require trial-like evidentiary standards.

■ In a somewhat analogous deprivation of a liberty interest, we note that revocation of probation in the Eighth Circuit requires only "enough evidence, within a sound judicial discretion, to satisfy the district judge that the conduct of the probationer has not met the conditions of probation." *United States v. Goeller,* 807 F.2d 749, 751 (8th Cir.1986) (quotations omitted). While the Eighth Circuit has not discussed at length the constitutionality of this standard, the Seventh Circuit, which requires the district court to be "reasonably satisfied" that the probationer has not met the requirements of probation before revocation can occur, specifically rejected a claim that the Due Process Clause requires facts to be proven by a preponderance of the evidence at revocation hearings. *United States v. Smith,* 571 F.2d 370, 372 (7th Cir.1978).

*Wolff* set out the procedural hearing requirements for prison discipline: an inmate is entitled (1) to advance written notice of the claimed violation at least 24 hours before the disciplinary hearing; (2) to call witnesses and to present documentary evidence in his defense if doing so will not jeopardize institutional safety or correctional goals; and (3) to receive a written statement from an impartial decisionmaker identifying the evidence relied on and the reasons for the disciplinary action. *Wolff,* 418 U.S. at 563–67, 94 S.Ct. at

---

3. The state argues for the first time on appeal that Hrbek did not present his due process argument to the state courts and is therefore procedurally barred from asserting the deprivation of his constitutional right in a petition for federal habeas corpus relief. We will not consider an issue not raised in the trial court absent exceptional circumstances which are not present here. *See Nolte v. Pearson,* 994 F.2d 1311, 1315 (8th Cir.1993). Accordingly, we address the merits of Hrbek's claim.

4. The state does not challenge Hrbek's assertion that he has a protected liberty interest in avoiding the disciplinary actions taken against him.

5. We make our decision against the background described by the Supreme Court:

Prison disciplinary proceedings, on the other hand, take place in a closed, tightly controlled environment peopled by those who have chosen to violate the criminal law and who have been lawfully incarcerated for doing so. Some are first offenders, but many are recidivists who have repeatedly employed illegal and often very violent means to attain their ends. They may have little regard for the safety of others or their property or for the rules designed to provide an orderly and reasonably safe prison life. Although there are very many varieties of prisons with different degrees of security, we must realize that in many of them the inmates are closely supervised and their activities controlled around the clock. Guards and inmates co-exist in direct and intimate contact. Tension between them is unremitting. Frustration, resentment, and despair are commonplace. Relationships among the inmates are varied and complex and perhaps subject to the unwritten code that exhorts inmates not to inform on a fellow prisoner.

*Wolff,* 418 U.S. at 561–62, 94 S.Ct. at 2977.

2978–80. The state complied with each requirement in this case. Hrbek can cite no case adding the requirement that guilt be proven by a preponderance of the evidence or any other standard of proof greater than "some evidence."[6]

Hrbek complains that if disciplinary committees are held only to a "some evidence" standard by the Constitution, the *Wolff* hearing requirement becomes meaningless because a guard's written report alone constitutes "some evidence." We agree that disciplinary actions may be taken—and often they are—based only on a guard's report. Even when there is substantial evidence to the contrary, the committee may find a guard's report to be credible and therefore take disciplinary action. *See Hill,* 472 U.S. at 456, 105 S.Ct. at 2774–75 (constitutionally sufficient evidence consisted of guard's report and oral testimony); *but see Freitas v. Auger,* 837 F.2d 806, 810 (8th Cir.1988) ("[a] bald assertion by an unidentified person, without more, cannot constitute some evidence of guilt"). However, the *Wolff* hearing ensures that the inmate has an opportunity to persuade an impartial decisionmaker, who must give written justification for his decision, that discipline is not warranted. This is the interest protected by the Constitution.[7] *Goff,* 991 F.2d at 1441–42.

Hrbek was given proper notice and an opportunity to persuade an impartial committee that he should not be subject to discipline. He failed. We review the outcome of the disciplinary hearing only to ensure that it "was not so lacking in evidentiary support as to violate due process" or otherwise constitute an arbitrary decision. *Hill,* 472 U.S. at 457, 105 S.Ct. at 2775. Our review of the record reveals some evidence to support the disciplinary committee's decision. Therefore, we conclude that the disciplinary committee's decision was not arbitrary and did not violate Hrbek's right to due process.

## III. CONCLUSION

For the reasons discussed above, we vacate the district court's writ of habeas corpus.

MORRIS SHEPPARD ARNOLD, Circuit Judge, concurring.

I concur in the result only because I think that a contrary holding is foreclosed by *Goff v. Dailey,* 991 F.2d 1437 (8th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 564, 126 L.Ed.2d 464 (1993).

---

**6.** Indeed, a preponderance of the evidence standard would beg the question: a preponderance of *what* evidence? The prison can limit an inmate's ability to call witnesses and present documentary evidence for institutional reasons, *Wolff,* 418 U.S. at 566–67, 94 S.Ct. at 2979–80, and inmates have no constitutional right to confront or cross-examine the state's witnesses. *Id.* at 567–70, 94 S.Ct. at 2980–82. It would be an empty exercise in semantics to require the prison to prove guilt by a preponderance of the evidence when the prison has such control over what evidence is introduced.

**7.** We emphasize that the state can set an evidentiary standard for disciplinary hearings that is higher than "some evidence." *See Hill,* 472 U.S. at 457, 105 S.Ct. at 2775; *Goff,* 991 F.2d at 1442 n. 12.